[No. A132914. First Dist., Div. Five. Feb. 4, 2013.]

LUCKY UNITED PROPERTIES INVESTMENT, INC., et al.,
Cross-complainants and Appellants, v.
ALBERT LEE, Cross-defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.A., C. and D.

636

**COUNSEL**

Law Offices of Mattaniah Eytan and Mattaniah Eytan for Cross-complainants and Appellants.

Kessler & Seecof and Benjamin R. Seecof for Cross-defendant and Appellant.

**OPINION**

**BRUINIERS, J.**—The parties before us have been embroiled in litigation in one form or another for over a decade.[1] Originally a dispute between property investors, the genesis of the present conflict was a suit in which each side alleged malicious prosecution by the opposing parties and their respective counsel in the underlying property lawsuit, and each side successfully obtained dismissal of the other's malicious prosecution claims through a special motion to strike under the anti-SLAPP (strategic lawsuit against

---

[1] See, e.g., *Woo v. Lien* (Oct. 2, 2002, A094960) (nonpub. opn.); *Woo v. Lien* (Oct. 3, 2002, A096145) (nonpub. opn.); *Shih v. Superior Court* (June 13, 2005, A110431) (petn. den.); *Woo v. Lien* (Sept. 15, 2006, A113350) (nonpub. order); *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620 [77 Cal.Rptr.3d 707]; *Woo v. Lien* (June 12, 2008, A114380) (nonpub. opn.); *Lucky United Properties Investment, Inc. v. Lien* (June 16, 2008, A119134) (voluntary dismissal); *Shih v. Lee* (Aug. 25, 2008, A120203) (nonpub. opn.); *Lien v. Lucky United Properties Investment, Inc.* (Nov. 26, 2008, A118698) (nonpub. opn.); *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125 [110 Cal.Rptr.3d 159]; *Shih v. Lien* (Aug. 11, 2011, A128525) (nonpub. opn.); *Shih v. Lien* (Oct. 30, 2012, A132471) (nonpub. opn.).

public participation) statute. (Code Civ. Proc., § 425.16;[2] see *Lien v. Lucky United Properties Investment, Inc., supra,* 163 Cal.App.4th 620 (*Lien*).) Far from resolving the litigation through these dismissals, the parties have continued to litigate over the fees and costs which the anti-SLAPP statute provides to a prevailing party. (See *Lucky United Properties Investment, Inc. v. Lee, supra,* 185 Cal.App.4th at pp. 130–131, 136–139 (*Lucky*).)

The current battle is over the proper method of calculation of interest owed on the various fee and cost awards. More specifically, the question is the date on which interest begins to accrue on postjudgment awards of fees and costs. We addressed this issue in part in a prior appeal. (*Lucky, supra,* 185 Cal.App.4th at pp. 136–139.) Since we find our prior ruling in *Lucky* to be binding law of the case, we have no occasion here to revisit that holding. *Lucky* did not, however, expressly address when interest starts to accrue on awards for costs and fees *incurred* postjudgment. On remand, the trial court ruled that, under *Lucky, all* postjudgment awards of costs and fees that were incurred *in the trial court* (whether prejudgment or postjudgment) start to accrue interest on the date of entry of underlying judgment, but awards of costs and fees that were incurred *on appeal* constitute independent judgments and thus start to accrue interest on the dates of the awards themselves. Both sides disagree with the trial court's approach. In the published portion of our opinion, we conclude that interest on awards of fees and costs incurred postjudgment starts to accrue on the date of entry of the awards themselves. Applying this rule, in the unpublished portion of this opinion, we recalculate the principal amount of the judgment and accrued interest remaining unsatisfied as of the date of the appealed trial court order. Also in the unpublished portion of our opinion, we reject Lucky's argument that the trial judge lacked jurisdiction after a postremittitur challenge under section 170.6, and we reject the parties' other challenges to the trial court's orders.

## I. Background

The competing claims grew out of a lawsuit originally filed in 1999, involving a dispute over the purchase of real property in San Francisco.[3] (See *Lien, supra,* 163 Cal.App.4th at pp. 622–623.) The relevant factual

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] In the first opinion we issued in the underlying property dispute, Justice Gemello aptly observed, "This case arises from the joint purchase of property on Joy Street in San Francisco by Ming Woo, Eric Lien, and Pi-Ching Yen. The purchase has yielded much grief and little joy." (*Woo v. Lien, supra,* A094960.)

background in the present dispute is set forth in *Lucky*'s statement of facts. "In July 2006, Eric Lien (Lien) initiated the instant case by filing a malicious prosecution complaint against Lucky United Properties Investment, Inc. (Lucky), Chin Teh Shih (also known as Jessie Woo) as trustee for the Woo Family 2000 Trust, and their attorney, Mattaniah Eytan. [¶] Lucky and Shih (referred to collectively herein as Lucky) responded to Lien's complaint by filing a special motion to strike under the anti-SLAPP statute. (§ 425.16.) The trial court granted the motion. [¶] Lucky also filed a cross-complaint for malicious prosecution against, inter alia, Lien and his attorney, [Albert] Lee. In response, Lien filed a special motion to strike the cross-complaint under the anti-SLAPP statute (§ 425.16), which the trial court granted. Lucky appealed, and we affirmed the order in [*Lien*]. [¶] Lee brought his own special motion to strike Lucky's cross-complaint, which the trial court granted as well. Lucky appealed (*Lucky United Properties Investment v. Lien*[, *supra*,] A119134) [app. dism.])." (*Lucky, supra,* 185 Cal.App.4th at p. 130.)

## A.  *Award of Prejudgment Costs and Fees*

In August 2007, Lee sought an award of the costs and attorney fees he incurred in connection with his successful anti-SLAPP motion. His related July cost memorandum for $415 was uncontested and granted by operation of law. In a November 6, 2007 order, the court awarded Lee $26,407.50 ($25,500 in attorney fees and $907.50 in additional costs) as the prevailing party on the anti-SLAPP motion pursuant to section 425.16, subdivision (c) (hereafter section 425.16(c)). (*Lucky, supra,* 185 Cal.App.4th at p. 131 & fn. 2.) Lucky appealed from the November 6, 2007 order. (See *Shih v. Lee, supra,* A120203.)

## B.  *Pre-Lucky Awards of Postjudgment Costs and Fees; Tenders of Payment*

On November 13, 2007, Lee prepared and recorded an abstract of judgment and filed notices of judgment lien. The next day (Nov. 14), he filed a cost memorandum to recover $424 in enforcement costs for these activities. Lucky did not file a motion to tax these costs, which were thus awarded by operation of law. Much later, in a February 6, 2009 order, the trial court determined that $335 of this $424 award should have been disallowed. The court granted Lucky a $335 offset against the cost and fee awards the court

made in the February 6, 2009 order. (*Lucky, supra*, 185 Cal.App.4th at pp. 131–136 & fn. 6, 145–146.)

On December 31, 2007, Lucky mailed to Lee a $26,819.90 check as payment for the November 6, 2007 award plus interest. Lee accepted the payment, but asserted it was insufficient to fully satisfy the judgment because it did not include the $424 cost award. (*Lucky, supra*, 185 Cal.App.4th at p. 132.)

On June 16, 2008, we dismissed Lucky's appeal (No. A119134) from the order that granted Lee's motion to strike. Our remittitur stated that Lee was to recover costs on appeal. Lee filed a $587.20 cost memorandum claiming these costs and the trial court denied Lucky's motion to tax. (*Lucky, supra*, 185 Cal.App.4th at p. 132.) Lucky paid the $587.20 cost award in August. Lee sought additional costs and fees incurred on appeal No. A119134 pursuant to section 425.16(c). In an August 20, 2008 order, the court awarded $33,830 in response to this motion. (*Lucky*, at pp. 132–133.)

On August 21, 2008, Lucky mailed Lee a check for $33,830, which was "tendered in full and complete satisfaction of that award and may not be used for any other purpose or applied to any other account. By accepting that check, you will acknowledge full and complete satisfaction of the award." Lee disputed the sufficiency of the payment, but deposited the check. (*Lucky, supra*, 185 Cal.App.4th at p. 133.)

On August 25, 2008, we affirmed the November 6, 2007 order in appeal No. A120203. Our remittitur indicated that Lee was entitled to costs on appeal. On or about October 28, 2008, Lee filed a $400.68 cost memorandum claiming these costs and the court denied Lucky's motion to tax. (*Lucky, supra*, 185 Cal.App.4th at pp. 133–134.) Lucky paid the $400.68 cost award in December.

On November 13, 2008, Lucky sent Lee a "Demand for Acknowledgement Of Satisfaction Of Judgment" pursuant to section 724.050, which identified the August 20, 2008 order as the "judgment." Lee rejected Lucky's demand. (*Lucky, supra*, 185 Cal.App.4th at p. 134.) On December 10, Lucky filed a motion for entry of full satisfaction of judgment under section 724.050, subdivision (d), contending there had been an accord and satisfaction under California Uniform Commercial Code section 3311 by his tender of the

cashier's check for $33,830. Lucky also sought an award of attorney fees and costs incurred in connection with this motion, and imposition of a $100 statutory penalty against Lee for failing to acknowledge satisfaction of the August 20, 2008 order. (*Lucky*, at p. 135.)

On December 2, 2008, Lee filed a comprehensive cost and fee motion, which, inter alia, sought fees for enforcing the November 6, 2007 order, fees incurred in appeal No. A120203, fees incurred in opposing Lucky's motion to tax October 28, 2008 cost memorandum, and fees and costs in preparing the December 2 motion itself. (*Lucky, supra*, 185 Cal.App.4th at pp. 134–135.)

In a February 6, 2009 order, the court granted Lucky's motion for entry of full satisfaction of judgment, imposed a $100 penalty on Lee for failing to acknowledge satisfaction of judgment, and awarded Lucky $9,510 in attorney fees and costs for prevailing on the motion (see §§ 724.050, 724.080). The court also ruled on Lee's December 2, 2008 cost and fee motion as will be further discussed *post*. Lee's appeal of the February 6, 2009 order was decided in *Lucky*. (See *Lucky, supra*, 185 Cal.App.4th at pp. 135–136.)

### C. Lucky *Decision, Appeal No. 124965: Legal Framework*

Before addressing the specific issues raised in Lee's current appeal, we reiterate our discussion in *Lucky* of several governing principles concerning judgments, costs, attorney fees, and interest—all of which played a significant role in the most recent proceedings on remand and bear directly on the instant appeal.

"1. *Judgment*

" 'A judgment is the final determination of the rights of the parties in an action or proceeding.' (§ 577.) There may be, in some circumstances, judgments for or against one or more of several plaintiffs or defendants in a single case (§ 578), but there is always one judgment that determines the rights of any one particular party or parties (Lucky) vis-à-vis another party on the other side of the pleadings (Lee).

"In the matter before us, there is no document in the record entitled 'Judgment.' However, the order granting Lee's anti-SLAPP motion to strike states: 'The Cross-Complaint For Damages For Malicious Prosecution is

hereby stricken and cross-defendant Lee is hereby dismissed with prejudice. [¶] IT IS SO ORDERED ADJUDGED AND DECREED.' A written order of dismissal signed by the court constitutes a judgment and is effective for all purposes. (§ 581d; *Cohen v. Hughes Markets, Inc.* (1995) 36 Cal.App.4th 1693, 1695, fn. 1 [43 Cal.Rptr.2d 66].) For purposes of this appeal, the judgment is the order dismissing Lee from the case.

"We also note that the order of dismissal does not specifically provide that Lee shall recover attorney fees and costs. This recitation is unnecessary, however, since attorney fees and costs are awarded to the prevailing party on an anti-SLAPP motion to strike as a matter of law, pursuant to section [425.16(c)]. (See also §§ 1032, 1033.5.)

"*2. Amount of the Judgment*

"The principal amount of a judgment is the amount of any damages awarded, plus any costs (including attorney fees) to which the prevailing party may be entitled, less any amounts paid by the judgment debtor. (§ 680.300.) Postjudgment interest accrues on the principal amount of the judgment at the rate of 10 percent per annum. (§ 685.010.) How the costs are added to the judgment, and how interest is calculated, turns on the manner in which those costs were imposed or the purpose for which the costs were incurred.

"*Prejudgment Costs to Prevailing Party.* As a general rule, the prevailing party may recover certain statutory costs incurred in the litigation up to and including entry of judgment. (§§ 1032, 1033.5.) These costs may include attorney fees, if authorized by contract, statute (such as the anti-SLAPP statute) or law. (§ 1033.5, subd. (a)(10).) Most costs are obtained by filing a cost memorandum, although attorney fees require a separate noticed motion. (§ 1033.5, subd. (c); Cal. Rules of Court, rule 3.1702.)[4] Where costs are established by the judgment, but the amount of the award is ascertained at a later time, the court clerk enters the costs on the judgment after the amount is determined. ([Rule] 3.1700(b)(4); *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 369 [11 Cal.Rptr.2d 723].) In other words, the amount of the cost award is incorporated into the judgment.

"Interest at the rate of 10 percent per annum accrues on the unpaid principal amount of the judgment (§ 685.010), including the amount of the cost award and attorney fees award (§ 680.300), as of the date of judgment entry (§ 685.020, subd. (a)). Therefore, interest ordinarily begins to accrue on the prejudgment cost and attorney fees portion of the judgment as of the same

---

[4] All further rule references are to the California Rules of Court.

time it begins to accrue on all other monetary portions of the judgment—upon entry of judgment. (See *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 76–77 [227 Cal.Rptr. 804] [once attorney fee award is determined by the trial court, it is added to the judgment, and the total judgment bears statutory postjudgment interest until paid].)

"*Postjudgment Enforcement Costs.* In addition to attorney fees and costs imposed as a result of prevailing in the action, postjudgment costs of enforcing the judgment may also be recovered. Some costs, such as fees incurred in regard to abstracts of judgment or notice of judgment liens, may be claimed as a matter of right under section 685.070. Other enforcement expenses incurred by a judgment creditor are recoverable if, upon noticed motion, the court determines they were reasonable and necessary costs of enforcing a judgment. (§ 685.040; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1141 & fn. 6 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*) [attorney fees incurred in regard to previous award of fees under anti-SLAPP statute are recoverable under § 685.040]; *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 22–23 [45 Cal.Rptr.3d 633] . . . [expenses of enforcing anti-SLAPP attorney fees award are recoverable under § 685.040].)

"When postjudgment enforcement costs are allowed, they become part of the principal amount of the judgment. (§§ 685.070, subd. (d), 685.090, subd. (a); *David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133, 147 [89 Cal.Rptr.3d 506] . . . .) Therefore, interest accrues upon those costs at the rate of 10 percent per annum. (§ 685.010, subd. (a).)

"*Appellate Court Order of Costs on Appeal.* If an appeal is taken from the judgment, the party prevailing in the Court of Appeal is usually entitled to costs on appeal. ([Rule] 8.278.) The award of costs is included in the remittitur, although the amount of the award is determined in the trial court. ([Rule] 8.278(b)(1), (c).) These costs, however, are not added to the trial court judgment, but constitute a separate judgment. (*Los Angeles Unified School Dist. v. Wilshire Center Marketplace* (2001) 89 Cal.App.4th 1413, 1419 [108 Cal.Rptr.2d 691] (*Los Angeles Unified School Dist.*); see . . . rule 8.278(b)(1), (c)(3).) Interest thereon begins to run from the date of the entry of the trial court's award. (See *Dalzell v. Kelly* (1952) 115 Cal.App.2d 60, 62–63 [251 P.2d 343] [costs awarded on appeal by appellate court bear interest from the date of taxing costs or expiration of time for taxing].)

"*Trial Court Order of Costs on Appeal.* A party may also obtain an award of costs, including attorney fees, if it has successfully defended on appeal the trial court's grant of its anti-SLAPP motion to strike. (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448 [121 Cal.Rptr.2d 275]; *Evans v. Unkow*

(1995) 38 Cal.App.4th 1490, 1499–1500 [45 Cal.Rptr.2d 624].) It is not entirely clear whether such an award should be incorporated into the original judgment (since it is imposed by statute rather than by the Court of Appeal, determined in the trial court, and intended to protect the defendant who succeeded in the trial court on the motion to strike) or should constitute an independent judgment (since it pertains to costs incurred solely in the appellate court). (See *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 461 [59 Cal.Rptr.3d 839] [award of attorney fees and costs under [§ 425.16(c)] does not depend on Court of Appeal making any award]; cf. *Los Angeles Unified School Dist., supra,* 89 Cal.App.4th at p. 1419 [costs on appeal awarded pursuant to § 1268.720, at the discretion of the appellate court, did not affect the finality of the underlying judgment].) Although in this case Lee obtained awards of attorney fees and costs for expenses incurred on appeal, we need not (and do not) decide this issue in order to resolve the appeal.

"3. *Allocation of Payments on Judgment*

"Payment on a judgment is allocated first to accrued interest on the principal amount, and then to the principal. (*Big Bear Properties, Inc. v. Gherman* [(1979)] 95 Cal.App.3d [908,] 915 [157 Cal.Rptr. 443] . . . ; see § 695.220.)" (*Lucky, supra,* 185 Cal.App.4th at pp. 136–139, fn. omitted.)

D.   Lucky, *Appeal No. 124965: Specific Rulings*

In *Lucky,* we first reversed the trial court's denial of Lee's December 2, 2008 request for attorney fees incurred in enforcing the November 6, 2007 order. (*Lucky, supra,* 185 Cal.App.4th at pp. 131, 140.) The trial court had denied the enforcement fees because they were not sought before satisfaction of judgment as required by section 685.080, subdivision (a). (*Lucky,* at p. 141.) The trial court apparently relied on the fact that in December 2007, long before Lee filed his December 2, 2008 motion, Lucky paid Lee $26,819.90 toward the November 6, 2007 award of $26,407.50. (*Id.* at pp. 132, 134–135, 141; § 685.080, subd. (a).) We held that the relevant "judgment" was the June 26, 2007 dismissal of Lucky's cross-complaint against Lee as augmented by all subsequent cost and fee awards, which were incorporated into the judgment under the principles we had set forth earlier in our opinion. (*Lucky,* at pp. 142–145.) As of December 2007, when Lucky made the $26,819.90 payment, the judgment totaled $27,246.50 without accrued interest ($415 + $26,407.50 + $424). (*Lucky,* at pp. 141–142.) Lucky's December 2007 payment did not satisfy this amount. (*Id.* at p. 142.) Therefore, Lee's motion "was not barred by the time limits of section 685.080." (*Ibid.*) We reversed the trial court's denial of Lee's $2,100 fee request for enforcing the November 6 award. (*Id.* at p. 152.)

Second, we reversed the trial court's $335 offset of Lee's cost and fee award, which was based on a finding that $335 of the $424 in costs Lee claimed on November 14, 2007 should have been taxed. (*Lucky, supra,* 185 Cal.App.4th at pp. 145–147, 152.) We held that the cost award had become final long before December 2008, when Lucky first raised its objections to the cost award and long before February 2009, when the trial court reduced the award, and could not be reduced at that late date. (*Id.* at pp. 146–147.)

Third, we reversed the trial court's order acknowledging Lucky's satisfaction of judgment, as well as the associated imposition of a statutory penalty and award of fees and costs against Lee. (*Lucky, supra,* 185 Cal.App.4th at pp. 147–152.) Accepting for purposes of argument that Lucky's motion properly sought an order acknowledging satisfaction of the August 20, 2008 award alone (separate from the rest of the judgment), we still reversed because (a) Lucky's August 21 payment did not satisfy that award in full because it did not include accrued interest (*id.* at p. 148, fn. 13) and (b) Lee's acceptance of the payment did not effect an accord and satisfaction (*id.* at pp. 148–151). We reversed the order granting Lucky's motion for acknowledgment of satisfaction of judgment, reversed the imposition of the statutory penalty and the award of fees and costs, and "remanded for a determination of the amount of attorney fees and costs Lee may recover from Lucky, as the prevailing party" on the motion in light of our rulings. (*Id.* at p. 151.)

Fourth, we noted that "the trial court awarded Lee $4,860 out of the $22,303.75 Lee had requested for attorney fees and costs incurred in connection with his December 2008 motion, 'in view of the limited success of [the] motion.' Because we reverse the court's order as set forth herein, we remand for the further purpose of the trial court's reconsideration of the attorney fees and costs that Lee should recover in connection with his December 2008 motion." (*Lucky, supra,* 185 Cal.App.4th at p. 151.)

Finally, we awarded Lee his costs on appeal and remanded the matter "for further proceedings as set forth in this opinion and consistent with applicable law. (E.g., [§ 425.16(c)].)" (*Lucky, supra,* 185 Cal.App.4th at p. 152.)

E. *Post-Lucky Cost and Fee Awards, Tenders, and Other Motions*

The remittitur from *Lucky, supra,* 185 Cal.App.4th 125 issued on August 31, 2010, and was filed in the trial court on September 1. On September 1, Lee filed a memorandum of $2,747.69 in costs on appeal and a separate $275 cost memorandum. On September 15, Lucky paid these cost bills with interest.

On October 12, 2010, Lee filed a motion for "entry of order in compliance with court of appeal opinion." Lee asked the court to vacate the order

acknowledging Lucky's satisfaction of judgment and the related statutory penalty and fee award. Lee also asked the court to award him (1) $22,303.75 in lodestar fees in lieu of the $4,860 awarded to him for bringing the December 2, 2008 motion; (2) $2,100 in lodestar fees incurred in enforcing the November 6, 2007 fee award; and (3) $335 that had been effectively deducted from his November 14, 2007 $424 cost award. He further asked the court increase the $22,303.75 and $2,100 lodestar fees by a 1.20 multiplier "to compensate for the delay in payment that occurred because of the erroneous rulings caused by Lucky," and by an additional 1.50 multiplier "because historical rates were used and because of the novelty, complexity [of the case] and the results achieved." Lee's October 12, 2010 motion also requested new cost and fee awards in the following amounts: (1) a lodestar amount of $87,510 in fees incurred since January 21, 2009, (2) a lodestar amount of $4,200 in fees for bringing the October 12, 2010 motion, (3) a 1.50 multiplier on both of these fee requests, and (4) $360 in costs incurred in bringing the October 12, 2010 motion. The trial court granted this motion in part and denied it in part in a January 31, 2011 written order that was later clarified in the court's July 26, 2011 order. The total amount of fees and costs awarded in the January 31, 2011 order was $64,073.70.

On February 1, 2011, Lucky mailed Lee a check for $64,108.80 with a cover letter stating, "Enclosed is full and complete payment of $64,073.70 pursuant to the Order, dated January 31, 2011, plus $35.10 for two (2) days of interest at 10% per annum." Lee returned the check with a letter stating, "On its face, this check is conditioned with the legally-operative statements: 'This is full and complete payment of this order dated January 31, 2011 . . . .' [¶] As you are aware, the conditions you have placed on my client's cashing of this check are improper. . . . [Y]ou are (again) illegally attempting to target payments to specific orders. [¶] Any and all payments must be unconditional."

On February 1, 2011, Lee filed another motion for new costs and fees, apparently for work performed between October 1, 2010, and December 21, 2010, and for anticipated work to litigate the February 1, 2011 motion. He also requested $844.99 in additional costs. On March 24, 2011, the court awarded $3,555 in response to this motion.

On February 11, 2011, Lee sent Lucky a settlement offer. He calculated the total amount of fee and cost awards to date, excluding appellate court awards of costs on appeal, and calculated interest on the total retroactive to the date of the original judgment, June 26, 2007, after crediting Lucky's payments to date. He contended the amount then due was $131,422.39 and offered to settle the litigation for $111,422.39.

On March 16, 2011, Lucky sent Lee its own calculation of the amount due, with accrued interest and credits for past payments, and offered Lee a check for $70,675.54 as the total amount then due. Lucky wrote, "This tender is made in satisfaction of all sums that the debtors believe are due and owing as of the date of this letter." Lee asked if Lucky was making an unconditional tender and Lucky replied, "The check was tendered in full and complete satisfaction of all sums due and owing as of the date of that letter. Period." By letter dated March 21, Lee rejected the tender both because it was conditional and because it did not satisfy the total amount due.

On March 28, 2011, Lucky tendered Lee $3,559.85 as payment of the $3,555 awarded on March 24 plus interest "in full and complete payment" of the March 24 award, and argued that this tender plus the February 1 tender together constituted full satisfaction of judgment. Lee rejected the tender on April 4 because it was conditional and because it did not satisfy the judgment.

In March and April 2011, Lee took several steps to collect on his judgment. He applied for an order directing Shih to appear for a judgment debtor's examination; the order issued on March 3 and noticed an examination for March 30. On March 22, Lucky filed a motion to quash the judgment debtor's examination "subpoena" or, in the alternative, a motion "for a determination of the remaining amount owed by judgment debtor." Lucky specifically asked the court to resolve the parties' dispute about how to calculate interest on the prior awards consistent with this court opinion in *Lucky, supra*, 185 Cal.App.4th 125. On March 28, Lee moved to compel responses to interrogatories that were served on Lucky in December 2007. On April 4, Lee moved "for an order compelling [Lucky] to unconditionally pay the undisputed amount owed to [Lee] and for the sheriff to take the money and deliver it to [Lee] if [Lucky] does not comply." On April 11, the clerk of the court issued a writ of execution for $108,597.55 plus $29.75 in daily interest. Lucky filed a motion to quash the writ of execution. On or about May 4, 2011, Lucky apparently filed an ex parte "motion to stay seizure of funds held by the Woo Family 2000 Trust at the Shanghai Commercial Bank until amount owed is determined by the court."

In the meantime, on March 28, 2011, Lee filed a "memorandum of costs after judgment, acknowledgment of credit, and declaration of accrued interest." He claimed $15,434 in new fees and costs that were incurred in February and March. Lucky moved to tax costs. In a June 2, 2011 order, the court granted the motion, explaining, "The costs were not reasonably incurred as Lee began enforcement no more than a few days after the last cycle of fee awards and as Lucky is willing to pay the full amount due once the dispute over interest is resolved."

On June 2, 2011, the court also denied Lee's motion for an order compelling payment of the undisputed amount owed. In addition, it denied Lee's motion to compel discovery responses from Lucky, granted Lucky's motion to quash the writ of execution, and stayed enforcement "to give Lucky an opportunity to voluntarily pay the amounts due once the interest dispute is resolved."

F.  *July 26, 2011 Order Calculating Amount Owed*

On July 26, 2011, the court issued its calculation of interest and its decision on the amount Lucky still owed to Lee. The court applied *Lucky*'s statement that awards of prejudgment costs and fees are incorporated into the judgment and earn interest from the date of entry of the judgment. (*Lucky, supra,* 185 Cal.App.4th at pp. 137–138.) The court then noted that *Lucky* stated that awards of postjudgment costs and fees incurred in the trial court in enforcing the judgment are also incorporated into the judgment and accrue 10 percent annual interest. (*Id.* at p. 138.) While *Lucky* did not explicitly state that interest on such awards accrues from the date of entry of judgment, the court concluded that "the best reading of *Lucky*" was that it did so. "While this has the counter-intuitive effect of requiring [Lucky] to pay interest accruing on fees and costs during a time in which they had not yet been incurred by Lee, this court is required to follow its best understanding of the Court of Appeal's holdings in *Lucky*."

Regarding awards of costs and fees that were incurred on appeal, the court first noted *Lucky*'s statements that an appellate court award of costs constitutes a separate judgment even though the amount of the award is determined on remand in the trial court, and the award accrues interest from the time the court rules on a motion to tax costs or upon expiration of the time to tax costs. (*Lucky, supra,* 185 Cal.App.4th at p. 138.) The court then noted that *Lucky* declined to decide whether a trial court award of costs or fees incurred on appeal pursuant to section 425.16(c) or other statutory authority constituted a separate judgment or was incorporated into the original judgment. (185 Cal.App.4th at p. 139.) The court ruled that such awards "constitute separate judgments and accrue interest on the date they are given." The court commented, "This approach has the advantage of avoiding the inequitable result of interest accruing on an obligation before it is incurred, which would be the case if costs and fees on appeal related all the way back to the date of the original judgment."

The trial court identified six separate judgments in the case: (1) the June 26, 2007 dismissal of Lucky's cross-complaint against Lee; (2) an August 18, 2008 appellate award of costs in appeal No. A119134; (3) an August 20, 2008 award of section 425.16(c) costs and fees incurred in appeal No. A119134;

(4) a December 16, 2008 appellate award of costs in appeal No. A120203; (5) a September 11, 2010 appellate award of costs in *Lucky, supra,* 185 Cal.App.4th 125; and (6) a January 31, 2011 award of fees incurred in *Lucky, supra,* 185 Cal.App.4th 125. Consistent with *Lucky,* the court ruled that the section 425.16(c) awards of prejudgment costs and fees were incorporated into the June 26, 2007 judgment and accrued interest from that date. For other awards of fees and costs, the court allocated all or parts of the awards to one or more of the six judgments and calculated interest on those sums from the dates of the respective judgments. The court also corrected or clarified portions of its prior orders, in particular the January 31, 2011 order. The court credited Lucky's payments to the various judgments and calculated, for judgment, the amount of principal and interest still due and the daily rate at which interest continued to accrue. According to the court's calculations, Lucky owed in total $69,415.25 in unpaid principal and $8,434.95 in unpaid interest as of the date of the order. The court ordered the $74,235.39 Lucky had on deposit with the court released to Lee, and ordered Lucky to pay the remaining amount due plus accrued interest. The court stayed enforcement efforts by Lee until August 23, 2011, to provide Lee a chance to file a supplemental motion for enforcement fees and costs.

On August 2, 2011, Lee filed this appeal challenging the court's June 2 and July 26 orders. Lucky filed a cross-appeal from the July 26 order. On about August 1, Lucky sent Lee a $4,185.35 payment, consisting of $3,614.81 (the difference between $77,850.20 and $74,235.39) and $570.54 in interest for 30 days to "allow time for the $74,235.39 to be released by the Clerk of the Court."[5]

## II. DISCUSSION

Rather than address the issues raised in the appeal and cross-appeal separately, we will address issues raised in both as they logically arise in our review of the appealed orders.

A. *Section 170.6 Issue**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5] The parties have included in the record evidence of matters that occurred after the July 26, 2011 order that is the subject of their appeal and cross-appeal. This evidence is not properly included in the record on appeal. (See *In re Francisco W.* (2006) 139 Cal.App.4th 695, 706 [43 Cal.Rptr.3d 171].) Therefore, we disregard the evidence in our consideration of this appeal; we grant Lee's motion to strike two of the exhibits from the respondent's appendix; and we deny Lucky's request that we take judicial notice of those same exhibits.

*See footnote, *ante,* page 635.

## B. *Accrual of Interest on Cost and Fee Awards*

We now turn to the crux of this appeal: the question of when interest starts to accrue on cost and fee awards that are entered postjudgment. Lee argues that *Lucky* compels the conclusion that, with the exception of appellate court awards of costs on appeal, all postjudgment cost and fee awards (regardless of whether the fees were incurred before or after judgment) accrue interest from the date of entry of the original judgment. He argues the trial court erred by treating trial court awards of costs and fees incurred on appeal as separate judgments and calculating interest on those awards from the dates the awards were entered. He also faults the trial court for allocating various cost and fee awards to multiple judgments. Lucky urges us to disapprove our statement in *Lucky* that awards of prejudgment costs and fees accrue interest retroactive to the date of entry of judgment and language in *Lucky* which, it contends, implies that the same rule applies to awards of postjudgment costs and fees. Lucky argues a consistent rule that cost and fee awards accrue interest from the dates of the awards themselves would both be more just—avoiding the accrual of interest on cost and fee awards before the costs and fees had even been incurred—and more practical to apply. Lucky criticizes the trial court for awarding any retroactive interest and for adopting a methodology that required allocation of cost and fee awards to multiple judgments. We conclude that Lucky's proposed approach for postjudgment trial court awards of costs and fees incurred after judgment is the correct one and reject any inconsistent reading of *Lucky*.

### 1. *Fees and Costs Incurred Before Judgment*

As previously noted, *Lucky* stated: "Where costs are established by the judgment, but the amount of the award is ascertained at a later time, the court clerk enters the costs on the judgment after the amount is determined. ([Rule] 3.1700(b)(4); *Bankes v. Lucas*[*, supra,*] 9 Cal.App.4th [at p.] 369.) In other words, the amount of the cost award is incorporated into the judgment. [¶] Interest at the rate of 10 percent per annum accrues on the unpaid principal amount of the judgment (§ 685.010[, subd. (a)]), including the amount of the cost award and attorney fees award (§ 680.300), as of the date of judgment entry (§ 685.020, subd. (a)). Therefore, *interest ordinarily begins to accrue on the prejudgment cost and attorney fees portion of the judgment as of the same time it begins to accrue on all other monetary portions of the judgment—upon entry of judgment.* (See *Sternwest Corp. v. Ash*[*, supra,*] 183 Cal.App.3d [at pp.] 76–77 [once attorney fee award is determined by the trial court, it is added to the judgment, and the total judgment bears statutory postjudgment interest until paid].)" (*Lucky, supra,* 185 Cal.App.4th at pp. 137–138, italics added.)

■ Lucky urges us to revisit this issue and reach a different conclusion. We conclude, however, that we are bound to follow our prior ruling on the issue under the doctrine of law of the case. " 'The doctrine of "law of the case" deals with the effect of the first appellate decision on the subsequent retrial or appeal: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citations.] But, the 'discussion or determination of a point not necessary to the disposition of a question that is decisive of the appeal is generally recorded as obiter dictum and not as the law of the case.' [Citation.] 'It is fundamental that the point relied upon as law of the case must have been necessarily involved in the case.' [Citation.]" (*Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 498 [102 Cal.Rptr. 795, 498 P.2d 1043], italics omitted.)

■ Arguably, our statements in *Lucky* about the accrual of interest on awards of prejudgment costs and fees were not necessary to our decisions in that appeal. However, " '[a] decision on a matter properly presented on a prior appeal becomes the law of the case even though it may not have been absolutely necessary to the determination of the question whether the judgment appealed from should be reversed. [Citations.]' (*Steelduct Co. v. Henger-Seltzer Co.* (1945) 26 Cal.2d 634, 643 [160 P.2d 804].) Thus, application of the law of the case doctrine is appropriate where an issue presented and decided in the prior appeal, even if not essential to the appellate disposition, 'was proper as a guide to the court below on a new trial.' [Citation.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 442 [42 Cal.Rptr.3d 677, 133 P.3d 581].) There is no question that our statements were intended to guide the trial court on remand, when the issue of interest on the award was almost certain to arise. The trial court certainly understood itself to be bound by those statements on remand. In these circumstances, we conclude that application of the law of the case doctrine is appropriate here, and we will not revisit *Lucky*'s ruling on the accrual of interest on awards of prejudgment costs and fees.

### 2. *Fees and Costs Incurred After Judgment*

■ In *Lucky*, we held that awards of fees and costs incurred in postjudgment enforcement efforts are incorporated into the principal amount of the judgment and earn 10 percent interest per annum. We did not take a position on when such interest starts to accrue. (*Lucky, supra,* 185 Cal.App.4th at p. 138.) The trial court read *Lucky* to compel the conclusion that interest on awards of postjudgment fees and costs also ran from the date of entry of judgment. We now conclude, however, that postjudgment interest on such awards runs from the date the amount of the fee award is fixed, not from the date of the original judgment.

First, the statutory scheme does not clearly provide that interest on awards of postjudgment costs and fees runs from the date of entry of judgment. Section 680.300 defines "principal amount of the judgment" to mean "the total amount of the judgment as entered or as last renewed, together with the costs thereafter added to the judgment pursuant to Section 685.090, reduced by any partial satisfactions of such amount and costs and by any amounts no longer enforceable." Section 685.090 in turn provides that "[c]osts are added to and become a part of the judgment: [¶] (1) [u]pon the filing of an order allowing the costs . . . ." (§ 685.090, subd. (a)(1).) That the costs are incorporated into the judgment does not dictate that the awards accrue interest from the date of entry of judgment. Section 685.090, subdivision (b)—which provides that "[t]he costs added to the judgment pursuant to this section are included in the principal amount of the judgment *remaining unsatisfied*" (italics added)—suggests the contrary, that the cost award is added to the judgment *as of the date of entry of the cost award* (i.e., the judgment remaining unsatisfied *at that time*) and thus would logically start to accrue interest on the date. Under the trial court's approach in this case, the cost award was added to the principal amount of the judgment as of the date of the judgment, regardless of the whether any part of the judgment had already been satisfied; interest was calculated on that total amount from the date of entry of judgment, and partial satisfactions of the judgment were *thereafter* credited against the amounts due.[8]

Second, principles that govern awards of interest on judgments under this state's law support a rule that interest on postjudgment awards of costs and fees incurred after judgment starts to accrue on the date of entry of the awards.

■ In an early decision, the Supreme Court provided the following rationale for an award of postjudgment interest: "[T]he judgment in the case before us *fixed the liability of the defendant*, and from that date the money to which the plaintiff was entitled was detained from it, and natural justice, as well as the statute which provides that interest . . . is payable on judgments recovered in the courts of this state, justifies the judgment relating to interest [citation] . . . ." (*Columbia Sav. Bank v. Los Angeles* (1902) 137 Cal. 467, 471 [70 P. 308] (*Columbia*), italics added; see *Los Angeles R. & G. Co. v. Los Angeles* (1933) 132 Cal.App. 262, 264 [22 P.2d 541] [quoting and relying on this passage from *Columbia*].) Similarly, prejudgment interest is generally

---

[8] Although we reached a different conclusion in *Lucky* about commencement of interest with respect to awards of prejudgment costs and fees (*Lucky, supra*, 185 Cal.App.4th at pp. 137–138), we have explained *ante* that we adhere to that conclusion as law of the case. We further note the important distinction that such costs and fees were *incurred* before entry of judgment. Generally, when a judgment includes an award of costs and fees, the amount of the award is left blank for future determination and such awards are later entered nunc pro tunc. (See *Bankes v. Lucas, supra*, 9 Cal.App.4th at p. 369.)

denied "because of the general equitable principle that a person *who does not know what sum is owed* cannot be in default for failure to pay. [Citation.]" (*Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 906 [197 Cal.Rptr. 348], italics added (*Chesapeake*).) However, an exception to this general rule comes into play when damages are "certain, or capable of being made certain by calculation, and the right to recover . . . is vested in [the claimant] upon a particular day . . . ." (Civ. Code, § 3287, subd. (a); *Chesapeake*, at p. 907.) This principle—that interest starts to accrue on the date that the amount owed has been fixed or can be determined with certainty—is consistent with a rule that allows interest to accrue on a cost or fee award when the award is entered, rather than from entry of the original judgment, when the amount of the awards was not merely unknown, but the postjudgment costs and fees had not even been incurred.

This principle and rule are also consistent with case law addressing the effect of appellate court changes to cost and fee awards: a judgment that has been *modified* on appeal accrues interest from the original date of entry of the judgment, but a judgment that has been *reversed* on appeal accrues interest from the date of entry of a new judgment following remand. (See *Stockton Theatres, Inc. v. Palermo* (1961) 55 Cal.2d 439, 442–443 [11 Cal.Rptr. 580, 360 P.2d 76] (*Stockton Theatres*); *Snapp v. State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816, 817–820 [36 Cal.Rptr. 612, 388 P.2d 884] (*Snapp*).) "It is not the form of the order on the first appeal that controls, but the substance of that order." (*Snapp*, at p. 821.) In *Stockton Theatres*, the Supreme Court explained that a true reversal occurred when, in a prior appeal, it reversed a trial court order disallowing a surety bond as an item of costs and instructed the trial court to hold a hearing on the need for the bond and to award the costs if it found the bond was necessary. (*Stockton Theatres*, at p. 443.) In contrast, when the Supreme Court later reversed the trial court's finding on remand that the bond was unnecessary, a modification occurred: "[A]s a matter of law, the evidence demonstrated that the expenditure was necessary, and . . . the [trial] court should have allowed this item of costs. The legal effect of this [appellate court ruling] was to make the [trial court order on remand] state what it should have stated on [the] date [of the order on remand]. In a very real sense, in legal effect, it . . . determined that, after showing necessity, plaintiff was entitled to this award as of [the date of the order on remand]." (*Stockton Theatres*, at p. 443.) In *Snapp*, the Court of Appeal reversed a trial court order that an insurer was liable only for $8,168.25 in damage that occurred during the policy period. The appellate court concluded the insurer was also liable for damages that occurred later but were caused by factors operative during the policy period. (*Snapp*, at pp. 817–818.) "Since the [trial court] findings were explicit that the damage occurring after the termination date exceeded $25,000 [(the policy limit)], and

was caused by factors existing and operative before the termination date, the [Court of Appeal] ruled that, as a matter of law, the insurance company was liable . . . for $25,000." (*Id.* at p. 818.) The Supreme Court held the appellate court ruling was a modification rather than a reversal: "The obligation to pay at least $8,168.25 . . . was not set aside and vacated . . . . The legal effect of that reversal was to determine that as of the date of the original judgment plaintiffs were entitled to $25,000 . . . , based solely on the record then before the appellate court. No issues remained to be determined. No further evidence was necessary." (*Id.* at p. 820.)

These cases may be understood to hold that interest accrues from the date that the trial court fixes the amount due or errs in fixing the amount due but that error is corrected on appeal without the need for further factfinding in the trial court. When, on the other hand, the amount due is not and cannot be fixed until after further factfinding on remand from appellate review, interest does not accrue until the final determination is made. In either case, it is the correct fixing of the amount of the award that triggers the accrual of interest.

In sum, we now conclude that interest on an award of costs and fees that were *incurred* postjudgment accrues from the date the award is entered, not from the date of entry of the original judgment.

### 3. Fees and Costs Incurred on Appeal

■ In *Lucky*, we held that an appellate court award of costs on appeal constitutes a separate judgment. (*Lucky, supra,* 185 Cal.App.4th at p. 138; see *Supera v. Moreland Sales Corp.* (1938) 28 Cal.App.2d 517, 521 [82 P.2d 963].) Neither party disputes this conclusion. We declined to rule, however, on whether a *trial court* award of costs and fees incurred on appeal—for example, an award of such costs and fees made pursuant to section 425.16(c) as was done here—is incorporated into the original judgment or constitutes an independent judgment. (*Lucky,* at p. 139.) We wrote that the matter was "not entirely clear" and noted authority that such awards are not dependent on whether the appellate court awarded costs on appeal (*Carpenter v. Jack in the Box Corp., supra,* 151 Cal.App.4th at p. 461) and that an award of fees on appeal in an eminent domain proceeding pursuant to section 1268.720—which is awarded a the discretion of the appellate court—does not affect the finality of the underlying judgment (*Los Angeles Unified School Dist. v. Wilshire Center Marketplace, supra,* 89 Cal.App.4th at p. 1419). (*Lucky,* at p. 139.) We conclude that trial court awards of costs and fees incurred on appeal do not constitute separate judgments. Rather, they are incorporated into the original trial court judgment as are all other awards of costs and fees and, as with all other such awards, earn interest from the date the awards are entered.

The rule that appellate court cost awards constitute separate judgments is grounded both in statutory language and in rationales that do not apply to appellate cost and fee awards under section 425.16(c). First, rule 8.278(b) requires the Court of Appeal clerk to enter a "judgment awarding costs" as provided in that rule, and rule 8.278(c)(3) provides, "An award of [rule 8.278] costs is enforceable as a money judgment."[9] No statute or rule similarly provides that an award of costs or fees incurred on appeal pursuant to other statutory authority (such as § 425.16(c)) is enforceable as a separate money judgment. Second, one rationale for the separate judgment rule is that the appellate court, rather than the trial court, is the source of an award of costs on appeal pursuant to rule 8.278: "It is a complete judgment in itself that finds its origin in the order of an appellate or the Supreme Court . . . . The right to such judgment comes into being when the order of the reviewing court becomes final. The judgment itself is created when the successful party files his cost bill and his costs are taxed." (*Supera v. Moreland Sales Corp., supra,* 28 Cal.App.2d at p. 521.) Accordingly, it is conceptually separate from the underlying trial court judgment. The same cannot be said of a *trial court* award of costs and fees incurred on appeal. Third, one apparent purpose of the separate judgment rule for appellate cost awards is to allow a litigant to collect the costs without having to wait until the termination of potentially lengthy proceedings on remand, which could not affect its entitlement to the appellate costs. As Witkin explains: "[A]fter appeal, there may be a new trial with even a further appeal, and the proceedings may cover a long period of time. Accordingly, the award of costs on appeal, when properly allowed in the trial court, represents an independent judgment, enforceable by any available means. . . . Indeed, to avoid oppression, the trial court may stay the retrial of a case reversed on appeal until costs are paid. (See *Weile v. Sturtevant* (1917) 176 [Cal.] 767, 768 [169 P. 685].)" (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 978, p. 1026.) While the *appellate court's* award of costs on appeal might be unjustifiably frustrated by delay if the award were incorporated into the underlying judgment rather than standing as a separate, immediately enforceable judgment, the same is not necessarily true of a trial court award of costs and fees incurred on appeal. Here, for example, the trial court awarded additional costs and fees pursuant to section 425.16(c), which authorizes such an award to the prevailing party on an anti-SLAPP motion. If the appeals court had remanded the case for a new hearing on the anti-SLAPP motion, an award of appellate costs and fees under the statute might be premature.

---

[9] Former rule 26(d) provided that an award of costs on appeal could "be enforced in the same manner as a money judgment." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 972 [33 Cal.Rptr.2d 812] ["an award of costs on appeal is independent from the final judgment in the case and therefore may be enforced, if desirable or necessary, as a separate judgment"].)

In sum, there is no statutory or regulatory authority for treating a trial court award of costs and fees incurred on appeal as a separate judgment and the rationales for the separate judgment rule as to appellate awards of costs on appeal do not naturally apply to trial court awards. We conclude that the better approach is to follow the general rule that postjudgment awards of costs and fees in the trial court are incorporated into the underlying judgment for enforcement purposes. However, for the reasons stated *ante*, interest on these awards run from the date the awards are entered, not from the date of entry of the underlying judgment.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The June 2, 2011 orders are all affirmed. The July 26, 2011 order is reversed. On remand, the court shall enter an order stating that as of July 26, 2011, the principal amount of the judgment remaining unsatisfied was $69,227.90 and accrued interest remaining unsatisfied was $2,014.52 for a total of $71,242.42, with no additional interest accruing on these amounts thereafter. The court shall conduct further proceedings as necessary consistent with the views expressed in this opinion. Each party shall bear its own costs on appeal.

Simons, Acting P. J., concurred.

**NEEDHAM, J.,** Concurring.—I agree with the judgment of the majority in this case, as well as its conclusion that *Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125 [110 Cal.Rptr.3d 159] (*Lucky*) is law of the case as to the date that interest begins to accrue on a postjudgment award of costs and fees that were incurred before the judgment. I write only to set forth the basis for the rule we summarized in an abbreviated fashion in *Lucky*, to avoid any misapprehension that it is inconsistent with our ruling today.

In *Lucky*, we explained that the principal amount of a judgment consists of the damages awarded plus costs (including attorney fees). (*Lucky, supra*, 185 Cal.App.4th at p. 137; Code Civ. Proc., § 680.300.)[1] We noted that, once the amount of costs is established after judgment entry, the court clerk enters the costs on the judgment. (*Lucky*, at p. 137; Cal. Rules of Court, rule

---

*See footnote, *ante*, page 635.

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3.1700(b)(4).) We then cited *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 369 [11 Cal.Rptr.2d 723] (*Bankes*), which teaches that postjudgment awards of costs incurred prejudgment are entered nunc pro tunc to the date of the original judgment entry. (The court in *Bankes* explained: "Generally, when a judgment includes an award of costs and fees, the amount of the award is left blank for future determination. [Citations.] After the parties file their motions for costs and any motions to tax costs, the trial court holds a postjudgment hearing to determine the merits of the competing contentions. When the court's subsequent order setting the final amount is filed, *the clerk enters the amounts on the judgment nunc pro tunc.*" (9 Cal.App.4th at p. 369, italics added.)) On that basis, we summarized: "In other words, the amount of the cost award is incorporated into the judgment." (*Lucky, supra,* 185 Cal.App.4th at p. 137.)

We next stated the following: "Interest at the rate of 10 percent per annum accrues on the unpaid principal amount of the judgment (§ 685.010), including the amount of the cost award and attorney fees award (§ 680.300), as of the date of judgment entry (§ 685.020, subd. (a)). Therefore, interest ordinarily begins to accrue on the *prejudgment* cost and attorney fees portion of the judgment as of the same time it begins to accrue on all other monetary portions of the judgment—upon entry of judgment. [Citation.]" (*Lucky, supra,* 185 Cal.App.4th at pp. 137–138, italics added.)

Our conclusion that interest commences on postjudgment awards of prejudgment costs flowed naturally from the principle in *Bankes* that "the clerk enters the amounts [awarded for prejudgment costs] on the judgment *nunc pro tunc.*" (*Bankes, supra,* 9 Cal.App.4th at p. 369, italics added.) Since the amount of the costs is entered nunc pro tunc, as a matter of law the costs' entry date, and the date of their addition to the principal amount of the judgment, is deemed to be the date of the original judgment entry. And, as a matter of law, interest begins to accrue on the judgment (including the amount of the added cost award) from the date of judgment entry. (See § 685.020.)[2]

*Bankes*'s nunc pro tunc rule has been recognized by other California appellate courts, including *Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 996–997 [3 Cal.Rptr.2d 654] [citing the predecessor rule to Cal. Rules of

---

[2] Our citation to *Sternwest Corp. v. Ash* (1986) 183 Cal.App.3d 74, 76–77 [227 Cal.Rptr. 804], was merely for the purpose indicated by the parenthetical—that the total judgment including an attorney fee award bears postjudgment interest. Other language in *Sternwest* —concerning interest accruing from the date of a *claim* for attorney fees—is inapposite: it pertains to accrual of interest on the fees in calculating the award, not accrual of interest on the award; it was penned before *Bankes* and other cases established the nunc pro tunc rule; and in any event, it does not hold that interest cannot accrue until the actual *order* fixing attorney fees in a certain amount.

Court, rule 3.1700] and *Nazemi v. Tseng* (1992) 5 Cal.App.4th 1633, 1637 [7 Cal.Rptr.2d 762]. So established is this long-standing principle that it is recorded in Witkin's treatise on California civil procedure. (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 147, pp. 680–681.)

Application of the nunc pro tunc rule to establish the commencement date for the accrual of interest on awards for prejudgment costs also makes good sense and wise policy. By the time of the entry of a judgment allowing costs (including fees, by its language or operation of law), not only has the court determined who has prevailed in the action and whether a party has the right to recover costs, but all of the prejudgment costs have already been incurred. It is only due to procedural requisites—requiring a postjudgment application or motion—that the amount is not ascertained at the time of judgment, when the right to recover costs is vested. To compensate the prevailing party for the time value of the sums it has incurred but not been reimbursed—which of course is the whole purpose in awarding interest—interest should begin to accrue on postjudgment awards of prejudgment costs as of the date of judgment entry, when the right to recover costs is first established in the prevailing party. The nunc pro tunc rule thus preserves the "legitimate fruits of the litigation which would otherwise be lost to the prevailing party," because otherwise the prevailing party would lose the time value of the amounts it had spent on costs as of the date of judgment entry. (*Mather v. Mather* (1943) 22 Cal.2d 713, 719 [140 P.2d 808] [stating general basis for orders entering judgment nunc pro tunc]; see *Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 764–765 [114 Cal.Rptr.2d 558] [attorney fee order ascertaining the amount of attorney fees and costs would relate back to the judgment if the language of the judgment could be construed to grant the right to attorney fees].)

Nor is the nunc pro tunc rule trumped by the sentiment, expressed in regard to *prejudgment* interest, that a party should not begin to be liable for interest until he knows the amount of the principal. (See *Chesapeake Industries, Inc. v. Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 906 [197 Cal.Rptr. 348].) *Prejudgment* interest is part of the calculation of damages, is thus concerned with fault, and is addressed by Civil Code section 3287; by contrast, *post*judgment interest is an amount that accrues on the judgment as a matter of law, due solely to the passage of time, and is addressed by the Code of Civil Procedure. The two are distinct. (See § 685.110.) Postjudgment interest is not a penalty imposed on a judgment debtor for refusing to pay a sum after learning its precise amount, but compensation for the time value of the judgment creditor's money from the date that the creditor is deemed to have the right to it.

For purposes of a postjudgment award of enforcement costs and attorney fees incurred *after* judgment, however, the nunc pro tunc rule should not

apply. There is no reason to relate the cost award back to the original entry of judgment: by definition, *post*judgment costs are not incurred by the time the judgment was originally entered; nor did the original judgment award such costs. Indeed, postjudgment enforcement costs are not contemplated by the original judgment.

In sum, under section 685.090, subdivision (a), "[c]osts are added to and become a part of the judgment . . .[¶] . . . [u]pon the filing of an order allowing the costs pursuant to this chapter" and are "included in the principal amount of the judgment remaining unsatisfied"; this addition to the judgment and inclusion in the principal is nunc pro tunc to the date of the judgment for costs incurred before judgment, and as of the date of the cost order for costs incurred after judgment.

I concur.

A petition for a rehearing was denied February 26, 2013, and the opinion was modified to read as printed above.